Matthias, J.
Tbe facts are not in dispute. By ordinance No. 431-1941, passed November 5, 1941, the city of Cincinnati established a grade for Seymour avenue, from a place 500 feet, more or less, west of Langdon Farm road to Paddock road, that being tbe part of Seymour avenue wbicb passes tbe real estate owned by tbe defendants. At that time, Seymour avenue was 60 feet in width, with a 40-foot highway bounded on each side by a sidewalk 10 feet wide.
On March 3,1942, tbe predecessors in title of tbe defendants secured a permit for tbe construction of a building for a bowling alley and a restaurant and bar, wbicb was built at a level of from three to seven feet below the established grade of Seymour avenue. Tbe building is approximately 60 feet distant from tbe existing right of way of Seymour avenue. Tbe total property owned by tbe defendants, wbicb includes several adjoining parcels, has a frontage of 265 feet on Seymour avenue.
On May 9, 1951, the council of the city of Cincinnati adopted two resolutions. One declared it necessary to *97 improve Seymour avenue from 850 feet, more or less, north of Langdon Farm road to the east line of Long-view Asylum, by acquiring property where needed, grading, installing sewers and water connections within the street lines, constructing channelization islands, laying cement sidewalks, sodding and constructing a 44-foot concrete roadway with concrete curbs. Such resolution prescribed a curb grade which was practically identical with that established in the ordinance enacted in 1941 and reduced the ground available for sidewalks to eight feet on each side, as prescribed in an ordinance enacted April 25, 1951.
The other resolution declared an intention “to appropriate to public use property and easements required for the proposed realignment, widening and improvement of Seymour avenue from 850 feet, more or less, north of Langdon Farm road to the east line of Longview Asylum.” By this ordinance a strip 20.02 feet wide and immediately adjacent to Seymour avenue was appropriated. That strip constituted a substantial portion of a parking lot used in connection with the bowling alleys owned by the defendants. This action seeks assessment of compensation for such strip. Neither resolution established any grade for the appropriated strip.
Testimony of engineers familiar with the proposed improvement disclosed that presently Seymour avenue is improved by a roadway covered with macadam, which varies in width from 24 to 30 feet; that lateral support is presently provided for the street by sloping fills which are located within the 60-foot width of the street; and that the street is seven feet above the defendants’ land at the east end, and two feet three inches above at the west end.
The contemplated improvement will consist of filling the present 60-foot width of Seymour avenue to the level of the established grade for that, street, part of *98 such width now being supporting banks, and the land acquired from the defendants is to furnish lateral support for the street. This appropriated land is to be graded into a sloping bank along the widened street, and no land not now subject to the established grade of Seymour avenue is to be used for street traffic purposes. The effect of the improvement will be the extension of the present street 20 feet closer to the remaining Snyder property, at the present grade and with supporting banks, the same as now exist.
Testimony was also offered as to the location of the two entrance and exit ramps from Seymour avenue to the Snyder property, and also as to the probable length of such ramps in relation to the remaining area available as a parking lot.
All this evidence, with additional testimony as to the value of the appropriated land and the damage to the residue, was considered by the jury in arriving at its verdict.
The question of law presented is whether error was committed by the Court of Common Pleas by precluding any recovery in this action based upon probable or possible damages which may result from a future change of grade of the appropriated strip from its present level. The defendants contend that the award of compensation should include damages which may result from possible changes in the grade of the appropriated strip, but the trial court limited recovery to the value of the land taken and the damages caused to the residue of the property by the act of appropriation in accordance with adopted plans.
The defendants base their claim for such additional compensation on the decision of this court in Grant v. Village of Hyde Park, 67 Ohio St., 166, 65 N. E., 891, and Tenney v. Cincinnati, 67 Ohio St., 518, 67 N. E., 1103.
In the Grant case, however, the village of Hyde Park *99 appropriated ground for the initial construction of a street and did not establish any grade levels for the new street. The Court of Common Pleas in its charge to the jury authorized it to determine “the probabilities or the contingencies that may arise in the future grading of this strip of ground for street purposes,” and set forth the different possibilities which might impair the value of the defendants’ remaining land. That charge was approved by this court.
The defendants herein claim they are entitled to have these probabilities assessed now and included in the verdict of the jury.
As in the Grant case, supra, the appropriation of the land of the defendants by the city of Cincinnati in the instant case was made without the establishment by ordinance of the grade of such land. Establishment of such a grade before the appropriation of the land is not essential, and the failure to so fix the grade does not justify speculation by the jury as to the possible or probable grade which may thereafter be established or the damage which may result therefrom.
In the case of City of Akron v. Chamberlain Co., 34 Ohio St., 328, 32 Am. Rep., 367, this court considered the liability of a city resulting from the initial establishment of the grade of a street by ordinance, which grade was 14 feet higher than the surface of the street level existing when the abutting owner constructed a flour mill on his premises. The holding of the court is stated in the syllabus as follows:
“1. The owner of a lot abutting on an unimproved street of a city or village, in erecting buildings thereon, assumes the risk of all damage which may result from the subsequent grading and improvement of the stréet by the municipal authorities, if made within the reasonable exercise of their power.
“2. The liability of a municipality for injury to buildings on abutting lots exists only where such build *100 ings were erected with reference to a grade actually established, either by ordinance or such improvement of the street as fairly indicated that the grade was permanently fixed, and the damage resulted from a change of such grade, or, where the buildings, if erected before a grade was so established, were injured by the subsequent establishment of an unreasonable grade.
“3. Whether a grade be unreasonable or not, must be determined by the circumstances existing at the time the grade was established, and not by the circumstances existing at the time abutting lots may have been improved.
“4. Within the principle of municipal liability, as above stated, is the case where a lot is improved in anticipation of, and with reference to, a reasonable future grade which is afterward established, and damage results from a subsequent change in the grade.”
In the case of City of Akron v. Huber, 78 Ohio St., 372, 85 N. E., 583, the abutting owner brought suit against the city for damages to his land resulting from the fixing of a grade of the street and improvement thereof in accord with such grade. In such improvement, the' removal of an outcropping of rock resulted in a lowering of the street three feet below the front line of the plaintiff’s land.
This court held in the syllabus as follows:
“The doctrine recognized in this state respecting the liability of a municipality for injuries to improved abutting property resulting from changes in grades of streets does not extend such liability to a case in which no grade has been established prior to the improvement of the property and where the grade subsequently established is not unreasonable. (The City of Akron v. The Chamberlain Company, 34 Ohio St., 328, approved and followed.) ”
*101 Those cases recognized the absolute right of the city to establish grades for streets without liability to the abutting landowners, except where the grade established is unreasonable. This rule was not applied in the Grant case, supra, and the charge to the jury approved in that case was so broad as to permit it to assess damages for the prospective establishment of a grade which the city might have made without any liability to the abutting owner.
The Court of Common Pleas in the instant case did not commit error when it charged the jury that “in determining the damage to the residue, you are not to consider the question of grade change,” and that “there is no issue in this case dealing with any claim for damages by reason of a grade change.”
Other errors are assigned by the defendants, relating to introduction of improper evidence and the refusal to give certain special charges. These requested charges were that “since the municipal government has acquired this property in fee simple, it can construct to the height of the present authorized level of the roadway, to the very edge of the Snyder property,” and that “in assessing the damage to the residue of the property of the defendants, Roy and Margaret Snyder, you must consider the reduction in value that would be caused by the improvement of the strip taken at the grade established for the present right of way.”
The court properly refused these requested charges because the record discloses no evidence of any proposed change in an established grade and for the further reason that no recovery may be had by these defendants resulting from the possible future establishment of the grade of the appropriated land. The Grant case, so far as it sanctions an instruction of similar import, is disapproved.
*102 The record discloses that no error prejudicial to the defendants resulted from such evidence or refusal to charge.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Hart and Zimmerman, JJ., concur.
Middleton, J., concurs in the judgment.
Taft, J., concurs specially.
Stewart, J., not participating.